## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**AGNES KRIBBELER,**

      *Plaintiff,*

      **v.**                                        **Civil No.: 1:20-cv-02008-JRR**

**ZEN ENTERPRISES CORPORATION,**

      *Defendant.*

### MEMORANDUM OPINION

Pending before the court is Defendant Zen Enterprises Corporation's Motion for Summary Judgment on Counts I, II, VI, and VII. (ECF No. 118; the "Motion.") The court has reviewed all papers; no hearing is necessary.[1] Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

### I.   BACKGROUND

Plaintiff Agnes Kribbeler brought suit against Defendant in the Circuit Court for Howard County, Maryland on June 8, 2020. (ECF No. 2.) Defendant subsequently removed the action to this court on July 8, 2020. Since that time, the parties have engaged in nearly five years of pleading amendment, motions practice, and discovery. Plaintiff's Third Amended Complaint is the operative complaint. (ECF No. 67; the "TAC.") In her TAC, Plaintiff asserts seven counts:

> Count I: Violations of the Maryland Wage Payment & Collection Law ("MWPCL"), MD. CODE ANN., LAB. & EMPL. § 3-501, *et seq.*;
>
> Count II: Violations of the Fair Labor Standards Act (FLSA"), 29 U.S.C. § 201, *et seq.*;
>
> Count III: Breach of Express Contract;

---

[1] Following the filing of its Motion and Plaintiff's opposition thereto, Defendant filed a request for a hearing on same. Defendant's request does not set forth any basis for why a hearing would be warranted or beneficial; indeed, Defendant did not even opt to file a reply in further support of its Motion. The court has reviewed the relevant papers and does not find a hearing is necessary.

> <u>Count IV</u>: Breach of Implied-in-Fact Contract and Quantum Meruit;
>
> <u>Count V</u>: Unjust Enrichment and Quantum Meruit;
>
> <u>Count VI</u>: Violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; and
>
> <u>Count VII</u>: Violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981(a).

(ECF No. 67 ¶¶ 51–90.)

## II.    MATERIAL UNDISPUTED AND DISPUTED FACTS

The parties' presentations of undisputed facts are not models of clarity. Contrary to Federal Rule of Procedure 56(c)(1), Defendant offers no statement of undisputed facts, instead asserting various factual allegations throughout its Motion devoid of citation to any record evidence. Plaintiff's opposition includes sections titled "Facts Conceded to be Undisputed and Material," "Disputed Material Facts" and "Additional Material Facts" (ECF No. 119 at 3-7); these sections bear on issues pertinent to Defendant's Motion.

It is undisputed that this action arises from the relationship between Plaintiff, an Asian American woman, and Defendant, a company that manufactures pain relief products for sale by third-party retailers, from approximately 2015 through 2019. (ECF No. 67 ¶¶ 7, 9–10; ECF No. 68 ¶ 9.) The nature of that relationship is heavily disputed; Plaintiff contends it was an employment relationship; Defendant contends it was an investment relationship, or, alternatively, an "outside salesman" relationship. (ECF No. 67 ¶¶ 10–15; ECF No. 118-1 at pp. 2–7; ECF No. 118-2 at pp. 60–63.) In its operations, Defendant employed eight people from January through March 2018, seven people from April 2018 through June 2019, four people from July through September 2019, and three people from October through December 2019. (ECF No. 118-2 at pp. 3–26.)

The parties dispute the nature of their relationship and the allegations in support of Plaintiff's claims of Defendant's wage violations under the FLSA and MWPCL and race discrimination[2] under Title VII and § 1981.  For instance, Defendant challenges the existence of an employment relationship with Plaintiff, offering the attestation of Lloyd Lake (Defendant's Chief Talent Officer) as follows:

> 14. Agnes Kribbeler performed all her services for Zen Enterprises Inc. as an outside sales agent, outside of the premises of Zen Enterprises Inc., which has never had any office, warehouse or other space in Maryland or in any jurisdiction adjacent to Maryland.

> 15. Zen Enterprises Inc. ended its relationship with her in June 2019 due to a fundamental disagreement about the value of her services and dissatisfaction with customer responses to Agnes Kribbeler's methods and activities.

.          .          .

> 19. Zen did not exercise routine control over what Agnes Kribbeler did or how she did it, or in what order she would engage in tasks of her choosing.

> 20. Zen did not pay salary or non-salary wages, pension or other retirement benefits, insurance, vacation pay or other employment benefits.

> 21. Zen did not put Ms. Kribbeler through training or on boarding.

> 22. Ms. Kribbeler had at all times independent control over her schedule, and remained free to do as she pleased, when she pleased and how she pleased.

> 23. Agnes Kribbeler did not have a punch clock to record her working time, nor other tools for tracking working time, because working time was not relevant to the services she provided or the commissions that she would, from time to time, generate.

---

[2] As reflected above, in her TAC, Plaintiff asserts claims of discrimination in violation of Title VII and § 1981 on the bases of "national origin, color, race, and sex harassment and discrimination."  (ECF No. 67 ¶ 2.)  Because the court will grant Defendant's Motion as to Plaintiff's Title VII claim, Plaintiff's recovery for Title VII sex-based and other discrimination similarly fails.  Neither party addresses Plaintiff's asserted "national origin and color" discrimination in the context of § 1981; the court thus limits its analysis to alleged race discrimination only.

24. Zen engaged in no annual reviews, routine performance appraisals, raise reviews, performance improvement plans ("PIPs") or other human resources reviews of Agnes Kribbeler.

25. Agnes Kribbeler was free at all times to make a profit on her own activities, free to market the product lines of horizontal competitors of Zen, and free at all times to seek or obtain employment from an employer in Maryland or elsewhere.

(ECF No. 118-2 at p. 28 ¶¶ 14–15, 19–25.) Defendant's Director of Operations, David Makima, attests to same. *Id.* at 33 ¶¶ 13–14, 16.

In contrast, Plaintiff declares by sworn declaration, with some supporting evidence, as follows:

4. I was hired by ZEN over the phone by Randy Ross and Dave Makima. Mr. Makima subsequently sent me paperwork, emailed me, and called to welcome me to ZEN.

5. I worked solely for ZEN from October 2015 through June 2019.

.       .       .

7. Mr. Ross and Mr. Makima provided me with onboarding documentation and mentored me through the process of managing ZEN's retail accounts.

8. My rates were set by ZEN. I did not have a set rate that I charged for sales services.

9. I was paid for work performed by ZEN Enterprises, LLC directly.

.       .       .

11. Mr. Ross and Ms. Caldwell from ZEN's headquarters were the recipients of my daily emails, and any accounts I was pursuing were sent to headquarters staff.

12. Mr. Ross, Mr. Makima, and Ms. Caldwell closely oversaw and micro-managed my handling of ZEN retailer accounts.

13. I performed most of my work at my home. I had a home office that I used to make calls, send emails, and write letters for mailing. That was my designated work location and I did not make regular

4

sales visits to stores. However, I was provided various resources from ZEN including, but not limited to, a ZEN email account, ZEN shipping account, sample products, reimbursement for expenses, and clerical support.

14. Mr. Ross and Mr. Lloyd exercised or had the right to exercise control over the performance of my work. While working for Defendant from October 2015 through June 2019, ZEN management oversaw, managed, and controlled the terms and conditions of my employment, including requiring me to submit progress reports and spreadsheets, utilize ZEN resources, and follow their directives.

15. I was instructed by ZEN executives to visit various Rite Aid locations in my local area. Similarly, Mr. Makima was assigned the same task in different regions across the U.S.

16. I was required to create and submit work logs (Exhibit C, Kribbeler Document Production 63-64, 262-837, 847-913, 923-938, 1162-1230, 1280-1285) to ZEN management. These logs included details such as retailers I contacted, contact names, and phone numbers. Mr. Randy Ross and the HQ team instructed me to create these documents to help manage my daily work with retailers. While I was not required to sign the logs, I was instructed to email them weekly to all employees, copying ZEN executives, including Mr. Ross and Ms. Lorena Caldwell (Executive Accounts Director).

(ECF No. 119-1 at pp. 2–3 ¶¶ 4–9, 11–16.)

The parties offer similar disputed accounts as to Plaintiff's race discrimination claim.

Plaintiff declares:

17. Lloyd Lake was aware that I am Asian. Lloyd Lake became aware that I am Asian around the time he discovered that the retail traction was the result of my work, not the Ross family's. This realization occurred when I accompanied Mr. Ross to a Rite Aid meeting with Ms. Jen Roush, where Mr. Ross took a photo of me. I noticed that all other employees were featured on ZEN's Facebook page; however, I was excluded from these social media posts.

18. I was directed to attend the Rite Aid meeting and the Natural Expo event in Baltimore, Maryland. During this meeting, Mr. Ross made a derogatory comment about my Asian descent, saying, "I would have never known." Adding further insult, Mr. Ross reassigned me to a different floor, preventing me from being at the

booth due to my race. When reporters from WBAL TV arrived, I was notably absent from the booth.

19. On October 4, 2018, Mr. Lloyd Lake (son of the owner) took me off all American accounts that I worked on for the prior three and half years and told me to go work on the "Asian account".

(ECF No. 119-1 ¶¶ 17–19.)

Defendant offers Lake's affidavit, containing competing facts as follows:

4. Neither I, nor anyone in Zen Enterprises, Inc.'s leadership in 2019, expressed any knowledge, opinion or information regarding the race of Agnes Kribbeler, which was not known to Zen Enterprises Inc.'s leadership in 2019.

5. No Zen Enterprise Inc. records known to me, or made known to me on or before June 6, 2019, discussed Agnes Kribbeler's race or ethnicity in any manner.

6. I never discussed Ms. Agnes Kribbeler's race, nor had occasion or inclination to consider it as a topic, on or before June 6, 2019.

7. Nothing in my interactions with Agnes Kribbeler up to June 6, 2019 over the phone or by email led me to an opinion, awareness or information regarding the specifics of her race or ethnicity.

8. I did not see a picture of Agnes Kribbeler on or before June 6, 2019, nor a video clip of her in any format. . . .

.           .           .

10. I learned of Agnes Kribbeler's race and ethnicity after receiving communications from the Equal Employment Opportunity Commission charge of racial discrimination and discussion of that charge, after Zen Enterprises Inc.'s relationship with Agnes Kribbeler had broken down.

(ECF No. 118-2 at p. 28 ¶¶ 4 –8, 10.) Makima attests to same. *Id.* at 33 ¶¶ 3–10.

Ultimately, the parties agree to minimal facts, including that Plaintiff never visited Defendant's headquarters, was not required to report for duty at a specific time or place, and did not work in a space controlled, rented, or owned by Defendant; and the relationship between

Plaintiff and Defendant ended in 2019. (ECF No. 118-1 at p. 2; ECF No. 119 at pp. 1–2; ECF No. 118-2 at p. 28 ¶ 2.ECF No. 119-1 at p. 2 ¶ 5.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make

credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## IV.    ANALYSIS

In its Motion, Defendant seeks summary judgment on Counts I, II, VI, and VII. (ECF No. 118.) It contends that summary judgment is warranted because Plaintiff was not its employee under the FLSA and MWPCL, Defendant is not an employer under Title VII (and the MWPCL), and Plaintiff fails to adduce evidence to support an inference of race discrimination as to her Title VII and § 1981(a) claims. (ECF No. 118-1.)

### A.  Count II: Violations of the FLSA

"The Fair Labor Standards Act requires 'a minimum wage and overtime pay for all covered employees.'" *Scott v. Baltimore Cnty., Maryland*, 101 F.4th 336, 341 (4th Cir. 2024), *cert. denied sub nom. Baltimore Cnty. v. Scott*, No. 24-515, 2025 WL 1020362 (U.S. Apr. 7, 2025) (quoting *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 240 (4th Cir. 2016)). "FLSA conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016). Defendant proffers two legal challenges to Plaintiff's claim under the FLSA: first, that Plaintiff was not an employee within the meaning of the FLSA; and second, in the alternative, Plaintiff was an "outside salesman" exempt from FLSA protection. (ECF No. 118-1 at pp. 2–7.)

### 1. *Employee Status*

The Fourth Circuit has noted that the FLSA's "circular" definition of "employee" as "any individual employed by an employer . . . is unhelpful." *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021) (first quoting 29 U.S.C. § 203(e)(1); next citing *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993)). "Lacking better guidance," courts consider the "totality of the circumstances," looking to "'the economic realities of the relationship between the worker and the putative employer' in deciding whether a particular worker is a covered employee." *Scott v. Baltimore Cnty., Maryland*, 101 F.4th 336, 341–42 (4th Cir. 2024), *cert. denied sub nom. Baltimore Cnty. v. Scott*, No. 24-515, 2025 WL 1020362 (U.S. Apr. 7, 2025) (citing *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016))).

"The touchstone of the 'economic realities' test is whether the worker is 'economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *McFeeley*, 825 F.3d at 241 (alteration in original) (quoting *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006)).

> Application of the test turns on six factors:
>
> (1) [T]he degree of control that the putative employer has over the manner in which the work is performed;
> (2) the worker's opportunities for profit or loss dependent on his managerial skill;
> (3) the worker's investment in equipment or material, or his employment of other workers;
> (4) the degree of skill required for the work;
> (5) the permanence of the working relationship; and
> (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.* (quoting *Schultz*, 466 F.3d at 304–05). "No single factor is dispositive; again, the test is designed to capture the economic realities of the relationship between the worker and the putative

employer." *Schultz*, 466 F.3d at 305 (citing *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994), *as modified on denial of reh'g* (Dec. 5, 1994)).

"If after application of the six 'economic reality' factors the moving party has shown that there is 'no doubt' as to the relationship between the parties, the court may determine as a matter of law that the worker is an employee or independent contractor." *McFeeley v. Jackson St. Ent., LLC*, 47 F. Supp. 3d 260, 268 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016) (citing *Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 459 (D. Md. 2000)).  However, where "the parties dispute numerous material facts that impact the application of these factors, the movant has failed to show the worker's status as a matter of law and is not entitled to summary judgment on this issue." *Id.* (citation omitted).

Considering the circumstances and disputed facts here, Defendant fails to show as a matter of law that Plaintiff was not its employee during the relevant period.  There are indeed many material facts in dispute pertaining to Defendant's control over Plaintiff (or lack thereof).[3]  As explained above, Lake attests that "Zen did not exercise routine control over what [Plaintiff] did or how she did it, or in what order she would engage in tasks of her choosing"; Plaintiff, in turn, attests that Ross, Makima, and Caldwell "closely oversaw and micro-managed [her] handling of ZEN retailer accounts," noting that Defendant required her to complete tasks, "submit progress reports and spreadsheets, utilize ZEN resources, and follow ZEN's directives."  (ECF No. 118-2 ¶ 19; ECF No. 119-1 ¶ 12, 14.)  Lake further attests that Defendant "did not pay salary or non-salary wages"; Plaintiff contends the opposite—that she was "paid for work" performed for Defendant

---

[3] It bears mention again that Defendant's assertions of fact lack record citation required by Rule 56(c)(1)(A). Nevertheless, the court considers the asserted facts to the extent they are mirrored in the sworn affidavits attached to the Motion.

and offers records of her paystubs (as well as emails from a Defendant employee referring to said documents as "paystubs").   (ECF No. 118-2 ¶ 20; ECF No. 119-1 ¶ 9, pp. 9–16.)

Plaintiff does not dispute that she used her own phone and computer, and worked primarily from her Maryland residence; however, these facts are relevant only to one factor in the economic reality test and are insufficient to leave the court with "'no doubt' as to the relationship between the parties," especially where Defendant's control of Plaintiff is heavily disputed.  *See McFeeley*, 47 F. Supp. 3d at 268, *supra*.  Indeed, the Fourth Circuit acknowledged in *McFeeley*, at least upon the persuasive circumstances there, that "the degree of control that the putative employer has over the manner in which the work is performed" is the "most critical of factors."  *See McFeeley*, 825 F.3d at 241.  Resolution of these factual dispute requires the weighing of evidence and assessment of witness credibility—matters within the sole province of the factfinder.  Summary judgment is, therefore, inappropriate; the court will deny the Motion on that basis.[4]

### 2. *Outside Salesman Exception*

At issue here, the FLSA's employer requirements regarding minimum wage and maximum hours  "do not apply to workers employed 'in the capacity of outside salesman.'"  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting 29 U.S.C. § 213(a)(1)).  "An 'outside salesman' primarily makes sales and regularly works away from the employer's place of business."  *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48 (2025) (citing *Christopher*, 567 U.S. at 148.  In particular, the FLSA exempts from its application: "(1) any employee employed . . . in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5 . . . )."  29 U.S.C. § 213(a)(1).  The referenced regulations provide that an "employee employed in the

---

[4] The court is entitled to deny the Motion exclusively on Defendant's failure to abide Rule 56, as addressed above.

capacity of outside salesman" refers to any employee whose "primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer," and who "is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."[5]  29 C.F.R. § 541.500(a).

Specifically, Defendant argues that Plaintiff was an outside salesperson within the meaning of 29 U.S.C. § 213(a)(1), because, according to Defendant:

> Ms. Kribbeler's primary activities relevant to her relationship with Zen included the making of sales of Zen's sports balm and related product lines. She was customarily and regularly engaged in activities far away from the employer's place/places of business – in Ms. Kribbeler's case, several time zones away from the Clark County, Nevada headquarters. In her Third Amended Complaint, as noted above, she admits that she never visited Zen's headquarters, and her routine remoteness from Zen's physical spaces is undisputed. . . .
>
> Ms. Kribbeler worked primarily from home, not from the Clark County, Nevada headquarters, as a sales agent.

(ECF No. 118-1 at p. 7.)

Assuming without deciding that the undisputed material facts support that Plaintiff satisfies the first prong of the outside salesman exemption, Defendant ignores the Department of Labor guidance upon which it relies.  As to the second prong, the regulations provide:

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an

---

[5] No party challenges the Department of Labor regulation.  Instead, they rely on same to advance their respective arguments.  *Cf. Carrera v. E.M.D. Sales Inc.*, 75 F.4th 345, 348 (4th Cir. 2023), *cert. granted,* 144 S. Ct. 2656 (2024), and *rev'd and remanded on other grounds,* 604 U.S. 45 (2025) (explaining that the FLSA "expressly delegated" the task of defining outside salesman to the Department of Labor and noting that no party challenged the regulations before it).

> adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property.

29 C.F.R. § 541.502.

Notwithstanding the guidance above, Defendant argues that Plaintiff satisfies the second prong because she "worked primarily from home, not from the Clark County, Nevada headquarters, as a sales agent." (ECF No. 118-1 at p. 7.) Defendant's contention is at odds with the interpretive regulations—"any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property." 29 C.F.R. § 541.502. Defendant thus fails to meet its burden to demonstrate that Plaintiff is an exempt outside salesperson as a matter of law; the court will deny the Motion on that basis.

## B. Count I: Violations of MWPCL

"The MWPCL is a statutory cause of action, the purpose of which is 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Cunningham v. Feinberg*, 441 Md. 310, 322–23 (2015) (quoting *Battaglia v. Clinical Perfusionists, Inc.,* 338 Md. 352, 364 (1995)). As with the FLSA, "the MWPCL requires that Plaintiff demonstrate the existence of an employment relationship between the parties." *Falaiye v. CCA Acad. Res., LLC*, No. CV PX 16-2887, 2017 WL 4098740, at *5 (D. Md. Sept. 14, 2017) (citing *Butler v. PP & G, Inc.*, No. WMN–13–43, 2013 WL 4026983, at *4 (D. Md. Aug. 6, 2013)); *see Morris v. King Oak Enters., Inc.*, No. 8:24-CV-00782-AAQ, 2024 WL 4476303, at *5 (D. Md. Oct. 11, 2024) (same). Under the MWPCL, "employer" "includes any person who employs an individual in the State or a successor of the person." MD. CODE ANN., LAB. & EMPL. § 3-501(b).

"The decisive test in determining the existence of an employer-employee relationship is the right of the employer to control and direct the employee in the performance of the work and in the manner in which the work is to be done." *Mohiuddin v. Drs. Billing & Mgmt. Sols., Inc.*, 196 Md. App. 439, 446 (2010) (quoting *Automobile Trade Assoc. v. Harold Folk Enterprises, Inc.,* 301 Md. 642, 660 (1984)); *see Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 387 (2001) (explaining that "[i]n the context of the doctrine of *respondeat superior,* we have stated that 'we definitely decided that the test in determining whether a person is a servant or an independent contractor is whether the employer has the right of control over the employee in respect to the work to be performed'").

The Appellate Court of Maryland and this court utilize the FLSA economic reality test to analyze employment relationships under the MWPCL. *See, e.g.*, *Qun Lin v. Cruz*, 247 Md. App. 606, 634 (2020); *Campusano v. Lusitano Const. LLC*, 208 Md. App. 29, 36 (2012); *Morris v. King Oak Enters., Inc.*, No. 8:24-CV-00782-AAQ, 2024 WL 4476303, at *5 (D. Md. Oct. 11, 2024); *Acevedo v. McCalla*, No. CV MJM-22-1157, 2023 WL 1070436, at *6 (D. Md. Jan. 27, 2023); *Macsherry v. Sparrows Point, LLC*, No. CV ELH-15-22, 2017 WL 3315262, at *33–35 (D. Md. Aug. 3, 2017); *Rollins v. Rollins Trucking, LLC*, No. JKB-15-3312, 2016 WL 81510, at *4 (D. Md. Jan. 7, 2016). In determining an employer's degree of "control" over an employee under the MWPCL, courts consider "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Pinnacle Grp., LLC v. Kelly*, 235 Md. App. 436, 473 (2018) (quoting *Campusano*, 208 Md. App. at 39–40).

14

For the same reasons discussed above, genuine disputes of material fact prevent entry of summary judgment in Defendant's favor on Plaintiff's MWCPL claim. The parties offer competing representations (with supporting evidence) of how/if Defendant supervised and controlled Plaintiff's work, how/if Defendant paid Plaintiff, and how/if Defendant terminated Plaintiff. Resolution of these material factual disputes is reserved for the finder of fact. Summary judgment is not appropriate as to Plaintiff's claim for violations of MWCPL.

### C. Count VI: Violation of Title VII

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, an employer is defined as "a person" (including a corporation) "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."[6] 42 U.S.C. § 2000e(b). "An employer who employs fewer than fifteen employees does not satisfy Title VII's statutory definition of employer and, therefore, is not subject to discrimination actions founded on Title VII."[7] *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 671 (D. Md. 2011) (citing *Walters v. Metro. Educ. Enter., Inc.,* 519 U.S. 202, 212 (1997)).

Relevant here, Defendant argues it is not an employer under Title VII, as it did not have 15 or more employees in 20 weeks between January 1, 2018, and June 6, 2019, when the purported discrimination is alleged to have occurred. Defendant offers its payroll records; Defendant

---

[6] The definition also includes any agent of such person; no party argues this is relevant here. 42 U.S.C. § 2000e(b).

[7] No party argues the integrated employer doctrine is applicable here. *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 671 (D. Md. 2011).

reported eight employees from January through March 2018, seven employees from April 2018 through June 2019, four employees from July through September 2019, and three employees from October through December 2019.  (ECF No. 118-2 at pp. 3–26.)  Lake's attached affidavit attests to same.  (ECF No. 118-2 at p. 29 ¶ 16.)

Plaintiff offers no response to this argument, effectively conceding this point.  (ECF No. 48.)  *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she failed to respond to argument).  Defendant's challenge to its employer status under Title VII is certainly a material fact—and Plaintiff does not dispute the point or the record evidence Defendant offers in support of same. In view of Defendant's undisputed, unchallenged evidence, there can be no genuine dispute that it did not qualify as an employer at the time of the alleged discrimination at issue.  Defendant is thus entitled to judgment as a matter of law on Count IV, Plaintiff's Title VII claim.[8]

### D.  Count VII: Violation of 42 U.S.C. § 1981(a)

Finally, Defendant argues it is entitled to summary judgment on Plaintiff's Count VII, asserting a violation of 42 U.S.C. § 1981(a).  Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

---

[8] Because the court concludes as such, it does not address Defendant's argument that Plaintiff is not its employee under Title VII and that Plaintiff fails to demonstrate an inference of unlawful discrimination as to Plaintiff's Title VII claim.  (ECF No. 118-1 at pp. 2–4, 10–13.)

42 U.S.C. § 1981(a). "Although the statute does not mention 'race,' the Supreme Court has interpreted it 'to forbid all racial discrimination in the making of private as well as public contracts.'" *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 170–71 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)); *see Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 156 (4th Cir. 2018) (same). "This includes race-based employment discrimination." *Nnadozie*, 730 F. App'x at 156 (citing *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 551–52 (4th Cir. 2006)). "To prevail, a plaintiff must . . . prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

"A plaintiff may ultimately prove a race-discrimination claim under § 1981 through 'direct or circumstantial evidence showing that an adverse employment action was [caused] by intentional discrimination aimed at the plaintiff's [race],' or through the 'burden-shifting framework' of *McDonnell Douglas Corp. v. Green*, [411 U.S. 792] (1973)." *Ali*, 832 F. App'x at 171 (quoting *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). While this framework "was initially developed for Title VII discrimination cases," it "has since been held to apply in discrimination cases arising under § 1981."[9] *Guessous*, 828 F.3d at 216 (citing cases).

---

[9] Relevant here, the Fourth Circuit has reaffirmed the application of the *McDonnell Douglas* framework to § 1981 claims in view of the Supreme Court's opinion in *Comcast*, explaining:

As the Fourth Circuit has explained it:

> The *McDonnell Douglas* framework is comprised of three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory.

*Id.* (first citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–56 (1981); then citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

"To establish a *prima facie* case of discrimination, 'a plaintiff must show that (1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.'" *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649–50 (4th Cir. 2021)). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253; *see Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (same).

---

We note at the outset that our application of *McDonnell Douglas* here is consistent with the Supreme Court's recent decision in *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, —— U.S. ——, 140 S. Ct. 1009, 206 L.Ed.2d 356 (2020). There, the Court held that a § 1981 plaintiff must prove that race was a but-for cause of the plaintiff's injury and, by the same token, rejected the plaintiff's counterargument that *McDonnell Douglas* established a contrary "motivating factor" causation test. *See id.* at 1019. "Whether or not *McDonnell Douglas* has some useful role in § 1981 cases," the Court declared, "it does not mention the motivating factor test" or "address causation standards." *Id.* Rather, the Court characterized its decision in *McDonnell Douglas* as "a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof discrimination." *Id.* We find ourselves confronting such a claim here and, as such, continue to apply *McDonnell Douglas*.

*Gary v. Facebook, Inc.*, 822 F. App'x 175, 180 (4th Cir. 2020).

Defendant contends Plaintiff fails to state a prima facie race discrimination case because she has not adduced evidence of adverse action under circumstances that raise an inference of unlawful race discrimination.   (ECF No. 118-1 at pp. 10–12.)  Plaintiff disagrees, pointing to the following:

> Lloyd Lake became aware that Kribbeler is Asian around the time he discovered that the retail traction was the result of her work, not the Ross family's. (Exhibit A, Kribbeler Dec., ¶17).[] This realization occurred when Kribbeler accompanied Mr. Ross to a Rite Aid meeting with Ms. Jen Roush, where Mr. Ross took a photo of her. *Id.* Kribbeler noticed that all other employees, who were not Asian, were featured on ZEN's Facebook page; however, Kribbeler was excluded from these social media posts. *Id.* Kribbeler was directed to attend the Rite Aid meeting and the Natural Expo event in Baltimore, Maryland. (Exhibit A, Kribbeler Dec., ¶18). During this meeting, Mr. Ross made a derogatory comment about Kribbeler's Asian descent, saying he never would have known. *Id.* Adding further insult, Mr. Ross reassigned Kribbeler to a different floor, preventing her from being at the booth. Non-Asian employees were not excluded. *Id.* When reporters from WBAL TV arrived, Kribbeler was notably absent from the booth. *Id.* On October 4, 2018, Mr. Lloyd Lake (son of the owner) took Kribbeler off all American accounts that she worked on for the prior three and half years and told her to go work on the "Asian account." (Exhibit A, Kribbeler Dec., ¶19).

(ECF No. 119 at p. 15) (citing to Plaintiff's sworn declaration).

Typically, in cases brought under the *McDonnell Douglas* burden-shifting framework, circumstances suggesting "unlawfully discriminatory motive" may be shown through the existence of a similarly situated comparator outside the protected class who was subject to different treatment. *See Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 572 (4th Cir. 2023) (citation omitted).   While Plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim," *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir.2003)), she must still "present evidence that reasonably creates an inference of an unlawfully discriminatory

motive to shift the burden to" Defendant.  *Noonan*, 84 F.4th at 573; *Jones v. W. Geophysical Co. of Am.*, 669 F.2d 280, 284 (5th Cir. 1982) (noting that "[t]he underlying purpose of the fourth element in the *McDonnell Douglas* formulation is precisely to establish this unlawful inference of discrimination").

Plaintiff asserts generally that she was treated differently than employees not of Asian descent; however, her opposition to Defendant's Motion does not rely upon comparator evidence.[10]  Instead, Plaintiff's points to actions she contends support an inference of racial discrimination—namely, the above-referenced comment from Ross (Defendant's employee), decisions to keep Plaintiff off social media and away from publicly facing settings, and Plaintiff's removal from American accounts in favor of an "Asian account."  While perhaps not abundant evidence, the court is not persuaded that Defendant has met its burden to show that Plaintiff's proffered evidence is insufficient as a matter of law to establish an inference of discrimination.[11]  The court will therefore deny the Motion on that basis.[12]

---

[10] Plaintiff must then demonstrate "different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  "[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010)).  Plaintiff has not done so here.

[11] Notably, Defendant does not assert a legitimate, nondiscriminatory reason for the purported adverse treatment, and thus similarly does not contend Plaintiff's evidence is insufficient to show pretext under the *McDonnell Douglas* framework.  The court cabins its analysis to the arguments asserted.

[12] While Plaintiff alleges a "hostile work environment" theory within her § 1981 claim, she did not pursue or assert this in opposition to the Motion  despite Defendant's challenges to the severity of the purported conduct at issue. A hostile work environment claim requires harassing conduct so extreme as to amount to a change in the terms and conditions of employment.  *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  To the extent Plaintiff does advance such a theory, despite not responding to Defendant's argument, her claim would fail.  It has long been recognized that "offhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *see Dangerfield v. Johns Hopkins Bayview Med. Ctr., Inc.*, No. CV JKB-19-155, 2019 WL 6130947, at*3 (D. Md. Nov. 19, 2019) (explaining that "[w]orkplace interactions which are merely 'disrespectful, frustrating, critical, and unpleasant' do not create a hostile work environment") (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)).  Plaintiff's sole allegation of harassing conduct is exactly that: a single comment from Defendant's employee that he "would . . . never have

## V.     CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 118) will be granted in part and denied in part.

/S/

June 9, 2025

_____
Julie R. Rubin
United States District Judge

---

known" of Plaintiff's Asian descent.  This sole comment is insufficient to demonstrate sufficiently severe or pervasive harassing conduct.